**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN MERZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BURFORD CAPITAL (UK) LIMITED, SIR PETER MIDDLETON GCB, CHRISTOPHER BOGART, JONATHAN MOLOT, AND CHARLES PARKINSON,<br><br>Defendants. | Case No: 19-cv-4807<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Merz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, its public filings, wire and press releases published by and regarding Burford Capital (UK) Limited ("Burford" or "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Burford securities from March 18, 2015 through August 7, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by

Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Burford securities during the Class Period and was economically damaged thereby.

7. Defendant Burford Capital (UK) Limited is a litigation-financing company, offering services for clients participating in litigation, arbitration, assert recovery, and other legal finance activities. Burford is based in the United Kingdom, with registered offices located at Regency Court, Glategny Esplanade, St Peter Port, Guernsey GY1 1WW, and has one of its

primary business offices in New York City. The Company's ordinary trade on over-the-counter ("OTC") under the ticker "BRFRF." The Company's American Depository Receipts ("ADRs') are traded on OTC under the ticker "BRFRY."

8. Defendant Sir Peter Middleton GCB ("Middleton") has been Burford's Chairman throughout the Class Period.

9. Defendant Christopher Bogart ("Bogart") has been Burford's Chief Executive Officer throughout the Class Period.

10. Defendant Jonathan Molot ("Molot") has been Burford's Chief Investments Officer throughout the Class Period.

11. Defendant Charles Parkinson ("Parkinson") has been a Director of Burford throughout the Class Period.

12. Defendants Middleton, Bogart, Molot, and Parkinson, are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. Burford is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Burford under *respondeat superior* and agency principles.

16. Defendants Burford and the Individual Defendants are collectively referred to herein as "Defendants."

## **SUBSTANTIVE ALLEGATIONS**

### **Materially False and Misleading Statements**

17. On March 18, 2015, Burford published its annual report for the year ended 2014 (the "2014 Annual Report"). The 2014 Annual Report included a "Report to Shareholders" which was signed by Defendants Middleton, Bogart, and Molot. The Report to Shareholders discussed the Company's return on invested capital ("ROIC"), stating in relevant part:

> We are pleased to report another successful year of significant growth and progress for Burford:
> ■ 43% increase in operating profit
> ■ ***56% increase in net investment recoveries[1] – and an increase in the net return on invested capital on those recoveries to 60%***
> ■ 98% increase in cash generation from the litigation investment portfolio
> ■ Trebling of capital committed to new investments
> ■ 17% return on equity

(Emphasis added).

18. The 2014 Annual Report also included the following chart regarding the Company's concluded investments, specifically discussing ROIC and internal rate of return ("IRR"):

**Concluded investment performance**

| $ in millions | Total investment | Total recovered | Return on invested capital | IRR |
|---|---|---|---|---|
| Total investment recoveries to date | 130.6 | 208.6 | 60% | 24% |
| Concluded investments made in 2009 • 100% of vintage | 7.0 | 31.7 | 355% | 53% |
| | 2.0 | 2.0 | (1%) | (3%) |
| | 2.5 | 0.0 | (100%) | 0% |
| 2009 performance to date | 11.5 | 33.7 | 193% | 35% |
| Concluded investments made in 2010 • 63% of vintage | 2.1 | 4.5 | 119% | 52% |
| | 1.4 | 2.5 | 76% | 32% |
| | 6.1 | 10.5 | 71% | 75% |
| | 4.8 | 7.8 | 62% | 23% |
| | 2.6 | 3.5 | 33% | 11% |
| | 9.1 | 10.2 | 13% | 15590% |
| | 4.5 | 4.0 | (12%) | 0% |
| | 3.2 | 0.2 | (95%) | 0% |
| | 3.9 | 0.03 | (99%) | 0% |
| | 5.6 | 0.0 | (100%) | 0% |
| 2010 performance to date | 43.3 | 43.2 | 0% | (2%) |
| Concluded investments made in 2011* • 54% of vintage | 5.5** | 26.1 | 371% | 124% |
| | 7.4 | 21.3 | 189% | 55% |
| | 3.5 | 6.7 | 92% | 34% |
| | 4.9 | 6.5 | 32% | 29% |
| | 10.0 | 7.5 | (25%) | 0% |
| | 4.0 | 0.2 | (94%) | 0% |
| | 4.4 | 0.0 | (100%) | 0% |
| 2011 performance to date | 39.7 | 68.3 | 72% | 27% |
| Concluded investments made in 2012 • 56% of vintage | 1.0 | 2.4 | 150% | 436% |
| | 4.3 | 7.8 | 82% | 13% |
| | 2.9 | 5.2 | 76% | 156% |
| | 15.0 | 26.3 | 75% | 34% |
| | 3.3 | 4.4 | 35% | 14% |
| 2012 performance to date | 26.5 | 46.1 | 74% | 30% |
| Concluded investments made in 2013 • 43% of vintage | 0.3** | 1.1 | 276% | 2050% |
| | 1.0 | 2.3 | 135% | 89% |
| | 0.5 | 1.1 | 122% | 586% |
| | 2.6** | 5.5 | 109% | 169% |
| | 1.0 | 2.0 | 104% | 92% |
| | 0.2 | 0.0 | (100%) | 0% |
| 2013 performance to date | 5.6 | 12.0 | 115% | 146% |
| Concluded investments made in 2014 • 4% of vintage | 4.0 | 5.3 | 32% | 275% |
| 2014 performance to date | 4.0 | 5.3 | 32% | 275% |
| Total investment recoveries to date | 130.6 | 208.6 | 60% | 24% |

* Investments with immaterial performance excluded, such as rapidly terminated investment agreements
** Ongoing matters with partial recoveries

19. The 2014 Annual Report included a Director's Report signed by Parkinson. The Director's Report discussed the responsibilities of directors, stating in relevant part:

**Corporate governance**
The Directors recognise the high standards of corporate governance demanded of

> listed companies. The Company has adopted and complied with the Guernsey Code of Corporate Governance (the "Code"). The Code includes many of the principles contained in the UK Corporate Governance Code. While the Company is no longer required to comply with the Code following the 2012 Reorganisation, it has nevertheless elected to continue to do so.

20. On March 26, 2016, Burford published its annual report for the year ended 2015 (the "2015 Annual Report"). The 2015 Annual Report included a "Report to Shareholders" which was signed by Defendants Middleton, Bogart, and Molot. The Report to Shareholders discussed the Company's ROIC and IRR stating in relevant part:

> We have experienced rapid growth over our six year history and 2015 was no exception:
> ■ Our income exceeded $100 million for the first time and our operating profit grew by 27% to $77 million – which translates into a 75% operating profit margin.
> ■ Our new investments also grew dramatically: we committed $206 million of new capital to litigation finance investments in 2015 (versus $153 million in 2014, a 35% increase), positioning the business to continue to grow its profitability in the years to come.
> ■ ***Our concluded investments have produced a 70% net return on invested capital and their IRR rose to 28%. They also produced significant cash – $140 million in cash receipts in 2015 (versus $63 million in 2014).***
> ■ Our return on book equity was 16% in 2015 and our return on cash equity was 20%.

(Emphasis added).

21. The 2015 Annual Report included a discussion as well as a chart of ROIC and IRR of Burford's concluded investments, stating in relevant part:

> **Performance of concluded investments[1]**
> ***Burford's investment performance has continued to be strong. Our return on invested capital has risen to 70% (2014: 60%) and the IRR across the portfolio has risen to 28% (2014: 24%).***
>
> In 2015 we saw a further acceleration of investment recoveries, which now stand cumulatively at $348 million (2014: $209 million). In other words, we brought in 40% of our lifetime investment recoveries – $139 million – in 2015 alone. Significantly, that acceleration was broad-based. In 2015, 16 different investments made actual cash payments to Burford. Some of those were single case investments that resolved entirely in 2015; others were receipts from portfolio arrangements where some or even most of the portfolio remains outstanding

* * *

## Concluded investment performance

| $ in millions | Total investment | Total recovered | Return on invested capital | IRR |
|---|---|---|---|---|
| Investments made in 2009 • concluded • 100% of vintage | 7.0 | 35.4 | 408% | 49% |
| | 2.0 | 2.0 | (1%) | (3%) |
| | 2.5 | 0.0 | (100%) | 0% |
| 2009 performance to date | 11.5 | 37.4 | 225% | 33% |
| Investments made in 2010 • concluded • 63% of vintage | 2.1 | 4.5 | 119% | 52% |
| | 1.4 | 2.5 | 76% | 32% |
| | 6.1 | 10.5 | 71% | 75% |
| | 4.8 | 7.8 | 62% | 23% |
| | 2.6 | 3.5 | 33% | 11% |
| | 9.1 | 10.2 | 13% | 15590% |
| | 4.5 | 4.0 | (12%) | 0% |
| | 3.2 | 0.2 | (95%) | 0% |
| | 3.9 | 0.03 | (99%) | 0% |
| | 5.6 | 0.0 | (100%) | 0% |
| 2010 performance to date | 43.3 | 43.2 | (0%) | (2%) |
| Investments made in 2011* • concluded • 63% of vintage | 10.0 | 42.5 | 325% | 124% |
| | 7.4 | 21.3 | 189% | 29% |
| | 3.5 | 6.8 | 93% | 34% |
| | 4.9 | 6.5 | 32% | 29% |
| | 10.0 | 7.5 | (25%) | 0% |
| | 4.0 | 0.2 | (94%) | 0% |
| | 4.4 | 0.0 | (100%) | 0% |
| | 3.6 | 0.0 | (100%) | 0% |
| 2011 performance to date | 47.8 | 84.8 | 77% | 26% |
| Investments made in 2012 • concluded • 78% of vintage | 3.9 | 10.0 | 150% | 42% |
| | 1.0 | 2.4 | 150% | 436% |
| | 24.7 | 61.0 | 147% | 60% |
| | 4.3 | 8.2 | 91% | 13% |
| | 2.9 | 5.2 | 76% | 156% |
| | 15.0 | 26.3 | 75% | 34% |
| | 3.3 | 4.4 | 35% | 10% |
| 2012 performance to date | 55.1 | 117.5 | 113% | 39% |
| Investments made in 2013 • concluded • 65% of vintage | 0.6** | 1.4 | 146% | 2739% |
| | 1.0 | 2.3 | 135% | 89% |
| | 0.5 | 1.1 | 122% | 586% |
| | 1.0 | 2.0 | 104% | 76% |
| | 1.0 | 1.3 | 46% | 25% |
| | 14.7 | 18.3 | 46% | 15% |
| | 0.2 | 0.0 | (100%) | 0% |
| | 0.7 | 0.0 | (100%) | 0% |
| 2013 performance to date | 19.7 | 26.4 | 34% | 24% |
| Investments made in 2014 • concluded • 24% of vintage | 0.2 | 0.9 | 271% | 376% |
| | 2.7** | 8.3 | 211% | 232% |
| | 3.0 | 4.5 | 52% | 260% |
| | 4.0 | 5.3 | 32% | 275% |
| | 1.4 | 1.5 | 13% | 11% |
| | 16.0 | 17.7 | 11% | 24% |
| 2014 performance to date | 27.3 | 38.2 | 40% | 91% |
| Total investment recoveries to date | 204.7 | 347.5 | 70% | 28% |

* Investments with immaterial performance excluded, such as rapidly terminated investment agreements
** Ongoing matters with partial recoveries

(Emphasis added).

22. The 2015 Annual Report included a Director's Report signed by Parkinson. The Director's Report discussed the responsibilities of directors, stating in relevant part:

**Statement of Directors' responsibilities in relation to the Group financial statements**
The Directors are responsible for preparing the Annual Report and the Group financial statements in accordance with applicable Guernsey law and International Financial Reporting Standards.

Under Company Law, the Directors must not approve the Group financial statements unless they are satisfied that they give a true and fair view of the financial position, financial performance and cash flows of the Group for that period. In preparing the Group financial statements the Directors are required to:
■ Select suitable accounting policies in accordance with IAS 8: Accounting Policies, Changes in Accounting Estimates and Errors and then apply them consistently;
■ Present information, including accounting policies, in a manner that provides relevant, reliable, comparable and understandable information;
■ Provide additional disclosures when compliance with the specific requirements in IFRSs is insufficient to enable users to understand the impact of particular transactions, other events and conditions on the Group's financial position and financial performance;
■ State that the Group has complied with IFRSs, subject to any material departures disclosed and explained in the financial statements; and
■ Make judgements and estimates that are reasonable and prudent

(Emphasis in original).

23. On March 14, 2017, Burford published its annual report for the year ended 2016 (the "2016 Annual Report"). The 2016 Annual Report included a "Report to Shareholders" which was signed by Defendants Middleton, Bogart, and Molot. The Report to Shareholders discussed the Company's ROIC and IRR stating in relevant part:

**Performance of concluded investments**[5]
Burford has seen strong performance over the past five years. Over the period IRR and ROIC performance has shown quite consistent returns, although to be sure there are and will be period-to-period levels of volatility. For example, if we were publishing this chart today as opposed to at year-end, ROIC would have increased again somewhat.

As litigation finance becomes more prevalent, more opportunities to deploy capital in different ways arise. While there are certainly opportunities that can be expected to produce returns consistent with our historical performance, there are also lower risk opportunities that we largely forego today that provide attractive uncorrelated returns somewhat below our historical performance – in the teens instead of the twenties. Indeed, GKC and its private capital investors are much more prepared

than we have been historically to embrace a wider range of potential returns. Given that our marginal cost of capital has now fallen to somewhere in the 5-6% region, we are prepared to be open to a broader range of opportunities given the return on equity enhancement that would occur from building a still larger portfolio even if some of those opportunities come with somewhat lower returns. Litigation finance remains a relationship business, and we believe it is important to serve all the needs of our clients, regardless of their risk/return profile.




(Emphasis in original).

24. The 2016 Annual Report included a chart regarding Burford's investment performance, including ROIC and IRR:

## Investment performance

| $ in millions | # of investments | Total commitment | Total invested | Total recovered | ROIC | IRR |
|---|---|---|---|---|---|---|
| Concluded | 3 | 11.5 | 11.5 | 40.1 | 251% | 32% |
| Partial realisation | – | – | – | – | | |
| Ongoing | – | – | – | – | | |
| **2009 VINTAGE TOTAL** | **3** | **11.5** | **11.5** | **40.1** | **251%** | **32%** |
| Concluded | 11 | 66.6 | 55.0 | 67.0 | 22% | 9% |
| Partial realisation | – | – | – | – | | |
| Ongoing | 5 | 46.5 | 46.5 | 0.0 | | |
| **2010 VINTAGE TOTAL** | **16** | **113.1** | **101.5** | **67.0** | | |
| Concluded | 8 | 70.5 | 47.9 | 84.8 | 75% | 23% |
| Partial realisation | 1 | 15.6 | 15.6 | 1.4 | | |
| Ongoing | 5 | 36.5 | 31.2 | 0.0 | | |
| **2011 VINTAGE TOTAL** | **14** | **122.6** | **94.7** | **86.2** | | |
| Concluded | 8 | 61.5 | 56.7 | 118.7 | 109% | 41% |
| Partial realisation | – | – | – | – | | |
| Ongoing | 1 | 2.0 | 0.5 | 0.0 | | |
| **2012 VINTAGE TOTAL** | **9** | **63.5** | **57.2** | **118.7** | | |
| Concluded | 8 | 20.8 | 19.7 | 25.1 | 31% | 24% |
| Partial realisation | 2 | 3.5 | 2.7 | 1.4 | | |
| Ongoing | 2 | 13.5 | 9.9 | 0.0 | | |
| **2013 VINTAGE TOTAL** | **12** | **37.8** | **32.3** | **26.5** | | |
| Concluded | 8 | 55.1 | 37.5 | 47.4 | 46% | 63% |
| Partial realisation | 3 | 32.8 | 25.0 | 16.6 | | |
| Ongoing | 12 | 71.9 | 46.4 | 0.0 | | |
| **2014 VINTAGE TOTAL** | **23** | **159.8** | **108.9** | **64.0** | | |
| Concluded | 4 | 48.6 | 41.4 | 44.9 | 21% | 87% |
| Partial realisation | 3 | 44.4 | 19.3 | 5.7 | | |
| Ongoing | 10 | 100.1 | 34.1 | 0.0 | | |
| **2015 VINTAGE TOTAL** | **17** | **193.1** | **94.8** | **50.6** | | |
| Concluded | 1 | 5.7 | 5.7 | 6.8 | 42% | 61% |
| Partial realisation | 2 | 112.0 | 112.0 | 62.0 | | |
| Ongoing | 18 | 250.1 | 86.2 | 0.0 | | |
| **2016 VINTAGE TOTAL** | **21** | **367.8** | **203.9** | **68.8** | | |
| **Total investment recoveries to date** | **51** | **391.7** | **326.8** | **521.9** | **60%** | **27%** |
| **Total ongoing investments** | **64** | **677.5** | **378.0** | **0.0** | | |

25. The 2016 Annual Report included a Director's Report signed by Parkinson. The Director's Report discussed the responsibilities of directors, stating in relevant part:

> **Statement of Directors' responsibilities in relation to the Group financial statements**
> The Directors are responsible for preparing the Annual Report and the Group financial statements in accordance with applicable Guernsey law and International Financial Reporting Standards. Under Company Law, the Directors must not approve the Group financial statements unless they are satisfied that they give a true and fair view of the financial position, financial performance and cash flows of the Group for that period. In preparing the Group financial statements the Directors are required to:

■ select suitable accounting policies in accordance with IAS 8: Accounting Policies, Changes in Accounting Estimates and Errors and then apply them consistently;
■ present information, including accounting policies, in a manner that provides relevant, reliable, comparable and understandable information;
■ provide additional disclosures when compliance with the specific requirements in IFRS is insufficient to enable users to understand the impact of particular transactions, other events and conditions on the Group's financial position and financial performance;
■ state that the Group has complied with IFRS, subject to any material departures disclosed and explained in the financial statements; and
■ make judgements and estimates that are reasonable and prudent

(Emphasis in original).

26. On March 14, 2018, Burford published its annual report for the year ended 2017 (the "2017 Annual Report"). The 2017 Annual Report included a "Report to Shareholders" which was signed by Defendants Middleton, Bogart, and Molot. The Report to Shareholders discussed the Company's ROIC and IRR stating in relevant part:

Key metrics[3] for our core balance sheet business – not including our significant investment funds – include:
■ ***Portfolio investment returns (net of losses but before operating expenses) of 31% internal rate of return ("IRR") and 75% return on invested capital ("ROIC") on $773 million of investment recoveries to date, with 2017 performance causing those returns to increase from their 2016 levels of 27% IRR and 60% ROIC***
■ Current investment portfolio of $1.5 billion, comprised of $982 million in balance sheet assets plus a further $564 million in undrawn commitments (2016: $850 million total; $560 million in assets and $290 million in undrawn commitments)
■ Widely diversified portfolio with 82 separate investments and 877 underlying claims (2016: 64 separate investments and 811 underlying claims, respectively)
■ New commitments to investments in 2017 of $698 million (2016: $378 million), plus a further $645 million in investment fund commitments for a total of $1.34 billion
■ Cash receipts from investments of $336 million in 2017 (2016: $203 million)

* * *

**Performance of concluded investments[5]**
■ ***$773 million of concluded investments have now produced 75% ROIC and 31% IRR***
■ Return on equity jumped to 37%

- ■ Weighted average duration of the portfolio fell to 1.5 years
- ■ Deployments continued at historical levels – 83% of commitments deployed
- ■ Receivables balance fell sharply as collections increased significantly
- ■ Cash receipts rose to $336 million (2016: $203 million) enabling reinvestment

(Emphasis added).

27. The 2017 Annual Report included a chart regarding Burford's investment performance, including ROIC and IRR:

**Investment performance**

| $ in millions | # of investments | Total commitments | Total invested | Total recovered | ROIC | IRR |
|---|---|---|---|---|---|---|
| Concluded | 3 | $11.5 | $11.5 | $40.1 | **251%** | **32%** |
| Partial realisation | – | – | – | – | | |
| Ongoing | – | – | – | – | | |
| **2009 vintage total** | **3** | **$11.5** | **$11.5** | **$40.1** | | |
| Concluded | 12 | $70.5 | $57.8 | $75.6 | **31%** | **10%** |
| Partial realisation | – | – | – | – | | |
| Ongoing | 4 | $44.8 | $44.8 | – | | |
| **2010 vintage total** | **16** | **$115.3** | **$102.6** | **$75.6** | | |
| Concluded | 9 | $78.9 | $55.9 | $85.3 | **51%** | **16%** |
| Partial realisation | 1 | $15.6 | $15.8 | $1.4 | | |
| Ongoing | 4 | $28.1 | $23.7 | – | | |
| **2011 vintage total** | **14** | **$122.6** | **$95.4** | **$86.7** | | |
| Concluded | 8 | $61.5 | $56.7 | $119.4 | **110%** | **42%** |
| Partial realisation | – | – | – | – | | |
| Ongoing | 1 | $2.0 | $0.5 | – | | |
| **2012 vintage total** | **9** | **$63.5** | **$57.2** | **$119.4** | | |
| Concluded | 8 | $20.8 | $19.7 | $25.0 | **30%** | **22%** |
| Partial realisation | 2 | $3.5 | $3.5 | $2.1 | | |
| Ongoing | 2 | $13.6 | $10.1 | – | | |
| **2013 vintage total** | **12** | **$37.9** | **$33.3** | **$27.1** | | |
| Concluded | 11 | $61.8 | $43.3 | $63.6 | **61%** | **57%** |
| Partial realisation | 4 | $47.8 | $33.2 | $22.2 | | |
| Ongoing | 8 | $53.1 | $38.8 | – | | |
| **2014 vintage total** | **23** | **$162.7** | **$115.3** | **$85.8** | | |
| Concluded | 7 | $68.2 | $55.5 | $62.9 | **183%** | **205%** |
| Partial realisation | 3 | $44.5 | $21.1 | $107.6 | | |
| Ongoing | 7 | $80.5 | $41.0 | – | | |
| **2015 vintage total** | **17** | **$193.2** | **$117.6** | **$170.5** | | |
| Concluded | 3 | $12.4 | $12.4 | $18.3 | **36%** | **36%** |
| Partial realisation | 4 | $155.9 | $151.8 | $136.1 | | |
| Ongoing | 13 | $185.0 | $59.6 | – | | |
| **2016 vintage total*** | **20** | **$353.3** | **$223.8** | **$154.4** | | |
| Concluded | – | – | – | – | **13%** | **250%** |
| Partial realisation | 1 | $160.4 | $163.9 | $13.1 | | |
| Ongoing | 28 | $537.4 | $151.0 | – | | |
| **2017 vintage total** | **29** | **$697.8** | **$314.9** | **$13.1** | | |
| **Total investment recoveries to date** | **61** | **$515.6** | **$442.8** | **$772.7** | **75%** | **31%** |
| **Total ongoing investments** | **82** | **$1,242.2** | **$628.8** | **–** | | |

* An investment initially closed in 2016 has been rolled into a portfolio investment in 2017

28. The 2017 Annual Report included a Director's Report signed by Parkinson. The Director's Report discussed the responsibilities of directors, stating in relevant part:

> **Statement of Directors' responsibilities in relation to the Group financial statements**
> The Directors are responsible for preparing the Annual Report and the Group financial statements in accordance with applicable Guernsey law and International Financial Reporting Standards.
>
> Under Company Law, the Directors must not approve the Group financial statements unless they are satisfied that they give a true and fair view of the financial position, financial performance and cash flows of the Group for that period. In preparing the Group financial statements the Directors are required to:
> ■ Select suitable accounting policies in accordance with IAS 8: Accounting Policies, Changes in Accounting Estimates and Errors and then apply them consistently;
> ■ Present information, including accounting policies, in a manner that provides relevant, reliable, comparable and understandable information;
> ■ Provide additional disclosures when compliance with the specific requirements in IFRS is insufficient to enable users to understand the impact of particular transactions, other events and conditions on the Group's financial position and financial performance;
> ■ State that the Group has complied with IFRS, subject to any material departures disclosed and explained in the financial statements; and
> ■ Make judgements and estimates that are reasonable and prudent.
>
> (Emphasis in original).

29. On March 13, 2019, Burford published its annual report for the year ended 2018 (the "2018 Annual Report"). The 2018 Annual Report included a "Report to Shareholders" which was signed by Defendants Middleton, Bogart, and Molot. The Report to Shareholders discussed the Company's ROIC and IRR stating in relevant part:

> Key metrics for our balance sheet litigation finance business include:
> ■ ***Portfolio investment returns (net of losses but before operating expenses) of 85% ROIC and 30% IRR on $1.0 billion of core litigation finance investment recoveries to date (2017: 76% ROIC and 31% IRR)***[1]
>
> * * *
>
> ***i. Performance of concluded core balance sheet litigation finance investments***

■ ***$1.03 billion of recoveries on investments have now produced 85% ROIC and 30% IRR***
■ Weighted average duration of the portfolio remains below two years – 1.8 years currently
■ We continued to deploy the vast majority of our commitments – 84% of commitments ultimately deployed

Burford has demonstrated consistently strong historical investment performance and enjoys a robust and substantial track record. IRR and ROIC performance (net of losses but before operating expenses) are shown in the graph on this page. Those performance figures have been generated from what is now more than $1 billion in investment recoveries across 92 core balance sheet litigation finance investments over nine years of performance.

While we publish this return information for the information of investors, in running the business we are more focused on overall business performance and value. We de-emphasise individual investment returns given their variability and our inability to keep all of our capital deployed at these return levels consistently.




(Emphasis added).

30. The 2018 Annual Report included a chart regarding Burford's investment performance including ROIC and IRR:

**Investment performance**

Core balance sheet litigation finance investments

| $ in millions | # of investments | Total commitments | Total invested | Total recovered | ROIC | IRR |
|---|---|---|---|---|---|---|
| Concluded | 3 | $11.5 | $11.5 | $40.1 | **251%** | **32%** |
| Partial realisation | – | – | – | – | | |
| Ongoing | – | – | – | – | | |
| **2009 vintage total** | **3** | **$11.5** | **$11.5** | **$40.1** | | |
| Concluded | 13 | $81.8 | $68.3 | $75.6 | **125%** | **21%** |
| Partial realisation | 1 | $13.0 | $13.0 | $107.0 | | |
| Ongoing | 2 | $22.3 | $22.3 | – | | |
| **2010 vintage total** | **16** | **$117.1** | **$103.6** | **$182.6** | | |
| Concluded | 10 | $86.9 | $59.7 | $85.3 | **42%** | **13%** |
| Partial realisation | 1 | $15.6 | $15.6 | $1.4 | | |
| Ongoing | 3 | $20.1 | $20.1 | – | | |
| **2011 vintage total** | **14** | **$122.6** | **$95.4** | **$86.7** | | |
| Concluded | 8 | $61.5 | $56.7 | $119.4 | **110%** | **42%** |
| Partial realisation | – | – | – | – | | |
| Ongoing | 1 | $2.0 | $0.5 | – | | |
| **2012 vintage total** | **9** | **$63.5** | **$57.2** | **$119.4** | | |
| Concluded | 8 | $20.8 | $19.7 | $25.0 | **30%** | **22%** |
| Partial realisation | 2 | $3.5 | $3.5 | $3.0 | | |
| Ongoing | 2 | $13.6 | $10.2 | – | | |
| **2013 vintage total** | **12** | **$37.9** | **$33.4** | **$28.0** | | |
| Concluded | 14 | $75.3 | $55.1 | $95.5 | **78%** | **43%** |
| Partial realisation | 4 | $48.0 | $35.8 | $23.9 | | |
| Ongoing | 5 | $40.0 | $28.7 | – | | |
| **2014 vintage total** | **23** | **$163.3** | **$119.6** | **$119.4** | | |
| Concluded | 9 | $70.5 | $60.0 | $71.3 | **216%** | **182%** |
| Partial realisation | 3 | $46.0 | $21.3 | $140.2 | | |
| Ongoing | 5 | $76.0 | $54.5 | – | | |
| **2015 vintage total** | **17** | **$192.5** | **$135.8** | **$211.5** | | |
| Concluded | 5 | $39.6 | $37.4 | $46.7 | **27%** | **18%** |
| Partial realisation | 5 | $163.3 | $139.7 | $147.1 | | |
| Ongoing | 10 | $205.2 | $87.0 | – | | |
| **2016 vintage total** | **20** | **$408.1** | **$264.1** | **$193.8** | | |
| Concluded | 2 | $21.0 | $18.6 | $24.5 | **26%** | **25%** |
| Partial realisation | 1 | $127.0 | $127.0 | $20.5 | | |
| Ongoing | 22 | $372.6 | $100.5 | – | | |
| **2017 vintage total*** | **25** | **$520.6** | **$246.1** | **$45.0** | | |
| Concluded | – | – | – | – | **0%** | **0%** |
| Partial realisation | 3 | $15.1 | $14.8 | $0.8 | | |
| Ongoing | 30 | $288.7 | $118.1 | – | | |
| **2018 vintage total** | **33** | **$303.8** | **$132.9** | **$0.8** | | |
| **Total investment recoveries to date** | **72** | **$642.2** | **$555.0** | **$1,027.3** | **85%** | **30%** |
| **Total ongoing investments** | **100** | **$1,298.7** | **$644.6** | **–** | | |

* Principal strategies investments of $226.8 million originally included in 2017 have been excluded from this table and are discussed separately

31. The 2018 Annual Report included a Director's Report signed by Parkinson. The Director's Report discussed the responsibilities of directors, stating in relevant part:

> **Statement of Directors' responsibilities in relation to the Group financial statements**
> The Directors are responsible for preparing the Annual Report and the Group financial statements in accordance with applicable Guernsey law and International

> Financial Reporting Standards.
> Under Company Law, the Directors must not approve the Group financial statements unless they are satisfied that they give a true and fair view of the financial position, financial performance and cash flows of the Group for that period. In preparing the Group financial statements the Directors are required to:
> ■ Select suitable accounting policies in accordance with IAS 8: Accounting Policies, Changes in Accounting Estimates and Errors and then apply them consistently;
> ■ Present information, including accounting policies, in a manner that provides relevant, reliable, comparable and understandable information;
> ■ Provide additional disclosures when compliance with the specific requirements in IFRS is insufficient to enable users to understand the impact of particular transactions, other events and conditions on the Group's financial position and financial performance;
> ■ State that the Group has complied with IFRS, subject to any material departures disclosed and explained in the financial statements; and
> ■ Make judgements and estimates that are reasonable and prudent.

(Emphasis in original).

32. The statements contained in ¶¶17-31 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Burford has been manipulating its metrics, including ROIC and IRR, to create a misleading picture of investment returns to investors; (2) these manipulations hid the fact that the Company is at high risk for a liquidity crunch and is already arguably insolvent; and (3) as a result of the aforementioned misconduct, Defendants' statements about Burford's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

33. On August 6, 2019, Muddy Water Research sent out a tweet announcing that it was going to be issuing a report on regarding an "accounting fiasco." The tweet stated, stating:




34. On this news, shares of Burford fell $2.87, or 17.11%, to close at $13.90 per share on August 6, 2019, damaging investors.

35. On August 7, 2019, Muddy Waters Research issued its report disclosing, among other things, that Burford had poor governance, was mismarking the value of its legal cases in which it invests, and was manipulating its metrics including ROIC and IRR. The Muddy Waters Research report stated in relevant part:

> BUR's top management, through their shareholdings (and sales), is in effect primarily compensated for aggressively marking cases in order to generate non-cash fair value gains. We calculate that as of H1 2019, fair value gains constituted 53.9% of balance sheet core litigation assets (up from 47.4% as of December 31, 2018). ***Until now, BUR has gotten away with aggressive and unwarranted marks by touting ROIC and IRR metrics. We show that BUR heavily manipulates these metrics. BUR then actively misleads investors about how its accounting for realized gains works. As a result of this deception, we believe investors give credence to BUR's fair value gains***. We believe that at least 72% – and possibly as much as 90% – of H1 2019 Total Investment Income was really from Fair Value

Gains. (BUR's Investment Income shows Fair Value Movements were 55.1% of Total Investment Income during the period.)

***In actuality, BUR's net realized returns have relied on a very small number of cases. Just four cases have produced approximately 66% of BUR's net realized gains during 2012 through H1 2019. We calculate that the other concluded cases during this time generated a combined ROIC of only approximately 19%. (One of the four outsized contributors was actually a loss a trial***, and was bailed out by BUR's largest shareholder, Invesco, at the direction of Neil Woodford protégé Mark Barnett. Absent the bailout, the case almost certainly would have been a total loss.) The reality of BUR's dependence on a small number of cases for the bulk of its returns is in stark contrast to the impression many investors seem to have that the portfolio produces meaningful returns across its breadth.

* * *

***BUR woos investors with non-IFRS metrics, particularly IRR and ROIC.[4,5,6] However, these metrics are meaningless. They are heavily manipulated and greatly mislead investors about BUR's actual returns.*** We have identified seven techniques through which BUR manipulates its metrics to create what we believe is an egregiously misleading picture of its investment returns. These manipulations usually involve BUR either giving itself credit for a recovery when one is uncertain (or even highly unlikely) or ignoring cases that are likely to be failures. ***The manipulation techniques are: 1) categorizing a loss as a win, 2) counting as "recoveries" awards or settlements with uncertain to highly unlikely collections as equivalent to cash returns when calculating IRR, 3) misleadingly representing investments that BUR inherited from acquisitions as favorable IRR, 4) choosing its own cost denominator in a case with a recovery when the total cost is much greater, 5) delaying recognizing a trial loss for two years, 6) keeping trial losses out of the "Concluded Investment" category, and 7) failing to deduct various costs against recoveries, including the very operating expenses associated with the investments themselves***

It is only since BUR finally provided an investment data table in H1 2019 on its website that it has now become possible to analyze individual cases and understand how misleading BUR's presentation of returns is. Through analyzing these cases, we were able to identify these various manipulation techniques. ***BUR also reinforces the misperceptions that its fair value gains are prudent by very cleverly conflating two distinct concepts: Realized Gains and Net Realized Gains.*** BUR's total investment income generally shows a roughly 50/50 split between Net Realized Gains and Fair Value Movements. Net Realized Gains actually include previously recognized Fair Value Gains. In other words, a Net Realized Gain is Proceeds minus BUR's invested capital in the case – not minus the investment's Carrying Value. We think the vast majority of investors believes the opposite is true – that Net Realized Gains are Proceeds minus the Carrying Values.[7] To the

> extent we are correct that most investors misunderstand Net Realized Gains, it is because BUR deliberately misled them.
>
> In reality, significant Net Realized Gains do not imply that BUR's Fair Value Gains are in fact conservative. Even more problematic is that when BUR books a Net Realized Gain that includes a previously booked Fair Value Gain, to balance out the accounts, an amount equal to the previously booked Fair Value Gain is deducted from the current period's Fair Value Movements.
>
> ***BUR has been highly reliant on only four cases for its monetizations, showing that its broader portfolio has lacked strength. Through manipulating ROICs and IRRs, BUR portrays itself as a business that derives profits from a broad range of cases in its book.*** The reality is that BUR's profits are much more concentrated, and have really been dependent on just four cases that have generated approximately two-thirds of its net realized gains since 2012. We calculate that during this time, the remainder of the Concluded Investments generated a combined ROIC of only approximately 19%.
>
> BUR appears financially fragile. BUR's operating expenses, financing costs, debt, and funding commitments, in our view, put it at high risk of a liquidity crunch. ***BUR is already arguably insolvent***. We believe BUR's "real" invested capital is $880.3 million. In our view, this adjusted capital needs to generate returns that fund operating expenses equal to approximately 9% of its balance, along with another approximately 7.5% of financing expenses. We believe that these cash needs are why BUR frequently raises capital. BUR's debt and litigation commitments together dwarf this adjusted capital base, meaning BUR could be viewed as insolvent.
>
> (Emphasis added).

36. On this news, Burford's ordinary shares plummeted $5.90, or 42.45%, to close at $8.00 on August 7, 2019 and Burford's ADRs fell $6.15, or 43.93%, further damaging investors.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants

who acquired Burford securities publicly traded on the OTC during the Class Period, and who were damaged thereby (the “Class”). Excluded from the Class are Defendants, the officers and directors of Burford, members of the Individual Defendants’ immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Burford securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

40. Plaintiff’s claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants’ wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants’ acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Burford;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused Burford to issue false and misleading SEC filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and SEC filing
- whether the prices of Burford's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Burford shares met the requirements for listing, and were listed and actively traded on the OTC, a highly efficient and automated market;
- As a public issuer, Burford filed periodic public filings;
- Burford regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press

releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Burford was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

45. Based on the foregoing, the market for Burford securities promptly digested current information regarding Burford from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT I**
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Burford securities during the Class Period.

51. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Burford were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Burford, their control over, and/or receipt and/or modification of Burford's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Burford, participated in the fraudulent scheme alleged herein.

52. The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and

disclose the true facts in the statements made by them or other Burford personnel to members of the investing public, including Plaintiff and the Class.

53. As a result of the foregoing, the market price of Burford securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Burford securities during the Class Period in purchasing Burford securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

54. Had Plaintiff and the other members of the Class been aware that the market price of Burford securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Burford securities at the artificially inflated prices that they did, or at all.

55. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Burford securities during the Class Period.

## COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of Burford, and conducted and participated, directly and indirectly, in the

conduct of Burford's business affairs. Because of their senior positions, they knew the adverse non-public information about Burford's misstatement of revenue and profit and false financial statements.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Burford's financial condition and results of operations, and to correct promptly any public statements issued by Burford which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Burford's disseminated in the marketplace during the Class Period concerning Burford's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Burford to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Burford within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Burford securities.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Burford.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 20, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Jacob A. Goldberg
Jacob a. Goldberg, Esq.
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com

and

Laurence M. Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November 2019, I caused a true and correct copy of the foregoing **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**, to be served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Jacob A. Goldberg*